Mr. Isaac, you have reserved three minutes for rebuttal, that gives you seven minutes out of the gate, and so the floor is yours. Thank you, Your Honor. Again, my name is Brian Isaac, as you know, I represent the appellant in this matter. Your Honor, we have four separate legal issues, they're all kind of interrelated, as you know. One deals with the interrogatory, one deals with the preclusion, one deals with the admission of the criminal matter versus Mr. Mitz, and the last one is kind of a combination that deals with the zero reward. Let me deal with the interrogatory issue first. I think that's the easiest issue for me to deal with legally, but the most problematic issue for me to deal with procedurally. I will acknowledge that this was not preserved, it's a problem. Preservation is a real issue. I think that I understand from 40 years of doing this that, as a general rule, judges are generalists and lawyers are generally specialists, and it's the lawyer's function to advise the judge, who has many, many cases, what a problem is so you can avoid the error. You know from our position in this case that the argument is that the use of the term the instead of a represents fundamental error because you can always have more than one argument, more than one cause of an incident. How many would remind me in theory, remind me where each one of them appeared and the extent to which the lawyers who were there had access to those? Your Honor, I've learned a long time ago never to tell any judge, much less an appellate judge in the Second Circuit, that 2 and 2 equals 5. We didn't object. There was no objection whatsoever. The court was not told. So it equals 4 again? I'm sorry? It equals 4. Yes. Yes. I'm sorry. It equals 4. But I mean maybe you're being too hard on yourself, Mr. Isaac, because I mean maybe it just wasn't that big a deal. And I guess the reason it might not be that big a deal, that the verdict form said the jury must find a proximate cause, but the jury instruction, excuse me, said the proximate cause. But the jury instruction said a proximate cause. But the jury instruction said that multiple times. The jury instruction was quite clear. Yes. The copy even went back to the jury, right? Yes. I didn't mean to interrupt. I'm sorry.        No, that's all right. So it suggests to me that the jury presumably did understand what the jury instructions were and didn't put a lot of stock in the difference between a and the. And that's the argument my adversary made, and that would be the argument that I would make too. But let me suggest to you that to me, I think that points the other way. And let me tell you why. It's very easy for lawyers to come up and actually say, well, what's the difference to a juror? They don't really. It's a versus the. And if you thought that's a significant difference legally, judges would certainly know it. And lawyers would certainly know it, but maybe a juror wouldn't. But here's the thing. The cases that we cited, right, we cited to Galliata, we cited to Fox v. Codesco, and the case we cited that said it was not fundamental error. What about our decision in Kirko? That seems to be very close to this case in terms of the facts. And we held it was not fundamental error there. Yes. We cited to the case. I think the difference here, Your Honor, if I can, is that if you look at what the arguments essentially are, when someone says that there isn't a difference between a and the, I understand it. I think that there is a difference.  There definitely is a difference. But given the instruction and the repeated use of a, then when you get to the verdict form, is it a fundamental problem, or does it appear that the jury followed the instructions notwithstanding the verdict form? And here's what, and, Your Honor, Judge Shinn, here's why I think it does. Let me just change the facts for a second and see. This will be my argument. Maybe you'll agree with me. Maybe you'll agree with me. Maybe you won't. Let's say that to trigger a statute, okay, you need it to be within a 5-mile radius. Just take my hypothetical, 5-mile radius. The judge charges on the statute 27 times and does it perfectly every single time. The verdict sheet that goes into the jury has a mistake. It says 15 miles. And the jury is looking at the verdict sheet. I understand the other one. I understand that, but that's there's a significant difference between 5 and 15 in that context and not the same difference between a and the. Putting this aside for the moment, given the facts, the four homes were rented throughout, the bungalows were in no shape to be rented and under the zoning laws they couldn't even be rented, where's the evidence of damage? So let me try to deal with those questions because you asked a bunch of them and I'll truncate my argument that's there first. With respect to the ZBA, I would ask you not to accept my adversary's argument. He's a great lawyer, did a very, very nice brief, that the ZBA precludes me from doing what Mr. Mitts wanted to do originally. Here's why. From what I can tell in the record, the ZBA appeal decision came down in September of 2024. Mitts buys the property in February of 2022. If you look in the record, this isn't just from Mr. Mitts, it's from Mr. Mitts and Mr. Maldonado. It's 298 to 299 in 442. There's an admission that he was not only doing work at the time, but he had the permits but he was doing the work. So yes, ultimately, after the regulation was repealed, the ZBA came to its decision. But that doesn't mean that he couldn't have done work. And if you look at 299 of the record, Mr. Mitts, before he got cut off dealing with the appraisal, specifically said that I would have had those bungalows finished by February of 2022, February 24, 2022. So I don't think this is a no liability case. And even assuming that it was, as you know from reading our brief, with respect to at least two of the properties, we have at least, I think it's $15,800 worth of damages. So this is not a case where there was never any liability, there was never any damages as a matter of law. And I don't think that that was contrasted. The other thing I would point out to you is that the examination, the cross-examination that was done of Mr. Mitts was spectacularly successful. I mean, it was a very, very good cross-examination. And the way that the lawyer did it was very, very smart. He took out, I think it went from A to P, if I'm correct, all of the foreclosure matters and said, was this something that happened? Was this something that happened? Was this something that happened? Now, to be fair, Mr. Mitts was able to rebut a lot of the claims regarding the foreclosures by saying they were paid off, this was in litigation, this was stayed. But the notion that this didn't affect the verdict, I just don't think is a fair reflection. And I say I only have 18 seconds left. Can I get to the crime? Sixteen years, Mr. Mitts is not a party, right? He's essentially a fact witness. The crime has nothing to do with this. And the general rule, as I understand it, is that he was released from prison. I thought the record was a little squishy on this. Clearly, his conviction is more than 10 years old. I think probably he got released more than a decade before his testimony. But do we know when he got released? I thought the record said, I'll check, I thought the record said that he was... He served 36 months. 36 months. Did it say when he began or when he left? No, it was the 36, he said three years. It could have been a late... Yes. It could have been that he got put off pending appeal. So I don't know. But let's just, assuming that it's 10 years and 609B says when it's more than 10 years, it's got to be substantial and the district court needs to put its findings on the record. And so the district court didn't do that. At least, I think it was a minute entry that the ruling was. Is that correct? That's correct. I thought, my recollection of the record is, and I'm not going to go over my time. My recollection of the record was because the crime involved moral turpitude dealing with tax evasion, she was letting it come in. That's my recollection of the record. But it seemed to me that the district court was referring to 609A too, which is true. But that doesn't matter because 609B, the federal rules of evidence, does say that nonetheless, if it's really old, the court has to make this finding. Yes. So assuming that didn't happen, we don't know what the judge would have said had she done it. But it still is on you, since this is a civil case, to show that this is more than harmless error. I guess I'm trying to figure out, all you said really was that it muddied the waters and it wasn't clear to me how that's going to be enough to demonstrate more than harmless error here. I'm open to my time. Is it okay if I answer the question? Okay. I'm sorry. I always ask for permission. No, that's the right way to be. Everybody should follow your example. I'm just what I do. So my position is that, and I want to just put it together, and then I'll sit down and I'll deal with it on reply. My position is if you look at the case, it would be hard to say that this was harmless because the way we view the case, there's at least some damage, right? Even if it's only $15,800, there was some damage. This jury awarded zero based upon an interrogatory that was incorrect, based upon a preclusion order that we think wasn't fair, at least with respect to the policy. Well, you clearly disagree with the verdict, but I guess then I'm trying to think, it seems to me you have to say a little more than we just think it would. Is the jury reached the wrong decision? Right. But I mean, I'm sorry. A harmless error always has to go, at least the way I look at it, to the strength of the case or the weakness of the case, right? If you have a rear-end collision and there's a mistake, the defendant is not going to be able to show harmful error if he would have won anyway. So my point is that I think that the case was strong enough to merit some award. The jury gave no award. And we think that the cumulative effect of those errors were sufficient to make this not harmless as a matter of law, given what the statutes say, given what the case law says, and given how the case was tried. All right. Thanks for listening. We'll come back to some of these issues when you have your rebuttal. Thank you so much, Your Honor. And now we'll hear from Mr. Rodd, who's already been praised for his brief and his learning. Thank you very much, Adam Rodd, on behalf of the appellee, the Town of Monroe. On this case, it's the Town's position that there simply was no fundamental error. This Court — With respect to — you're talking now about the verdict form or something? Correct. I'm talking about the first point that the appellant made. As this Court is aware, the Court is required to read both the charges and the verdict form and the verdict sheet together. Here, the charges were very, very clear. It referred to a proximate cause. Multiple times. I think five times. Multiple times. No reference to the proximate cause in the jury instruction. And on that point, Your Honors, the law presumes that the jury followed the charges correctly, absent some indication — The jury had the — these two different — these two different documents. The jury had them as documents, like the jury judge. They had a copy. That's correct, Your Honor. And there's a presumption under the law that the jury read the charges correctly. Absent some indication to the contrary. And on — I'm also troubled — you'll be glad to know, but I'm also troubled by the fact that the lawyers were — both sides were there and could read the two — what they now acknowledge, I guess, is a mistake, but they were there to do it. It wasn't something that the judge did, that the parties didn't know about at the time, that the lawyers didn't know about at the time. Well, I think in context, certainly there's no objection to, of course, the charges or the verdict sheet. And I think in real time, and I was one of the people that tried the case, it was understood that with the charges in the verdict sheet, that there was no ambiguity. And obviously, no one raised an objection. And there's clearly no indication, based upon the record, that there was any sort of confusion. There were no notes from the jury asking about a discrepancy or about the proximate cause versus a proximate cause. So, you know, under the law, we're simply not dealing with fundamental error. And again, the fundamental error standard, as the Court is aware, is a very high one, must be demonstrated that the error deprived the jury of adequate legal guidance to reach a rational decision. Here, the — So even if, I guess, we agree with you on this, let's — I mean, none of this will matter, of course, if there was a problem with the 609 analysis, right? I mean, in other words, if the District Court wrongly permitted evidence of Mitz's prior conviction, which was more than 10 years old, before the jury, why isn't that a problem? That means we've got to do this whole thing over. Well, first, Your Honor, I don't think that Magistrate Judge McCarthy got the 609 ruling wrong. Really? She did it on the record? She did. Really? She made findings. Did she make specific findings? Yeah. I'm not sure why they're not reflected in the record on appeal. I'd have to double-check that, but, I mean, they're — I mean, she wouldn't have made them off the record, or perhaps she did. There's no transcript that reflects any findings, and so that's why we're wondering whether they were made. You know, it's — I can't really speak to that. I know I was there when she decided it. Well, I mean, there's a transcript where she sort of makes some points about why this — it does go to veracity, which seems to be channeling 609A, but — and she says, I'm not going to decide this right now. But then the next thing in the record that I see is a minute entry that says the motion eliminated is denied, and with no discussion as to whether or not the probative value substantially outweighs the prejudice, which is what you're supposed to do. Now, that's not the end of the inquiry, of course, because it still needs to be that this is more than harmless. And so maybe that's where we should be focused. But your view is that she actually did make a finding on the record and articulated why this was — why the probative value substantially outweighed the prejudice? Yes. And, again, I can't speak to that. But, I mean, clearly on the briefs themselves, the law does establish that these crimes, which is, you know, 18 counts of aiding and assisting in tax fraud, clearly goes to the veracity of — Yeah, no question about that. And the other point is the appellant makes the point that, well, Mr. Mitts is just simply a non-party. In this case, when they made their motion in limine, they made an affirmative representation that Mr. Mitts is the individual with the most knowledge of the alleged damages to the appellant. They made that affirmative representation. And on this case, the proof of damages, the claim proof of damages, comes solely from testimonial evidence of — Let me ask you another related question. I'm looking at the verdict sheet, and the question was whether the plaintiffs had proven by a preponderance of the evidence that the enactment of the law was the proximate cause of damages. Was liability an issue? Had there been a concession of liability? In other words, the jury wasn't asked to find liability. Correct. And was that because liability was conceded? It wasn't clear to me. That's all I'm asking. Yes, the town did not dispute that the provision in the local law of an owner cannot own more than three properties was proper. So that was not in dispute. And that was referenced by the judge, that there's no claim here about whether it's a good law or bad law or constitutional or not. The law conceded that it was unconstitutional? The town conceded that it was unconstitutional? Yes. Okay. Go ahead. So in any event, there's complete absence. Otherwise, even if the admission of the conviction could be deemed to be error for the sake of argument, there's just no adequate non-speculative proof of any damages resulting from the local law. Again, plaintiffs said the only claims that were being made were relative to the Summercrest property. And the record has not disputed that at the time. There was an argument about $15,000 in damages. How do you respond to that? That, number one, that had nothing to do with the Summercrest property. Those are other properties which the appellant affirmatively waived any claim for damages for before the matter was submitted to the jury. And on the Summercrest property, there were four rental properties, four homes, and all of them were rented during the entire time that local law 3 of 2023 was in existence. With respect to the bungalows that were on the property as well, the record is undisputed that those were completely uninhabitable and had not been lived in for years. Secondly, under zoning, this was, I believe, in the R.R. Zoning District of the town, the use of bungalows was illegal pursuant to the decision of the Zoning Board of Appeals. So with true, there was an argument about the timing. Was it true the entire time? Yeah, yes. That the local law 3 was in effect? Yes, absolutely. The Zoning Board decision did not say that the bungalow usage was disallowed as of the date of this decision. Bungalow usage is not allowed in the Zoning District period. It's in the zoning code. I was interpreting an ordinance that had already been on the books for a while. Is that right? Yes. Okay. So unless the panel has any further questions, I see my time is just about up. All right. Thank you, Mr. Robb. Thank you. Mr. Isaac, back to you. The three minutes of rebuttal. Thank you, Your Honor. Judge Chin, if I can, I'm looking at the actual decision of the board. I pulled it off NISIF, and I don't think that's right. I'm just reading it to you. This is page 2 of the decision dated February 25, 2026, and it says the appendix page. It's not in the appendix page. I just wanted to see that. I wanted to see that, so I just wanted to read it to you. My view of the evidence is that you could rent these bungalows until the board made the September 14 decision. I mean, it wouldn't make any sense. That would be insane. My client purchased those properties in 2000. The argument is that there was an existing ordinance or regulation that was simply interpreted by the board, but that ordinance had been on the books the whole time. That's the argument. Is that wrong? I think that's wrong. It was the town that was the one that did the appeal. The town appealed the building inspector's decision. I think that should be subject to dispute, whether a law was in existence at a certain time. Right. But my view of the record, what I was suggesting was my view of the record is until that September 12, 14, 2024 decision, you could use bungalows for habitable purposes. That's what I think the record shows, and I think that's what the building inspector had held. You couldn't do it afterward, but you could do it before that. So the decision is not in the record? I didn't see the decision in the record. It's referenced in the record, but the decision itself isn't there. It's part of the cross-examination. How do we access it? Is it online somewhere? Yeah. It's in Supreme Court, Orange County. I can give you the index number, and I can give you the number. It's EF008794-2024, and the NYSIF docket is docket number 79. It's a notice of entry of the decision. We'll find it. Okay. Thanks. I'm sorry. Judge Chin, when you asked the question of my adversary, it brought something to my mind that I wanted to bring up with the panel because I was asked about the harmful effects of the case and whether or not the potential 609 violation was a problem. This is a very unusual case. I mean, the way I looked at the case, the town essentially conceded that the law was not constitutional. My client is in the business of developing properties, and a zero — and she had, what, 30 properties? A zero damage finding in that situation would be very, very unusual. I don't think you can say that it's necessarily harmless. The other thing I wanted to point out, and I just didn't have enough time originally, is that with respect to the way that the case was charted, the parties charted their own courts. Instead of putting in different damage verdicts with regard to each of the defendants, they decided to use Pamela Lee and the Summercrest properties. And here's what the trial court specifically said on 477 of the record. Plaintiff wanted them considered as a single entity for simplicity, and the court stated that the plaintiff was, quote, not withdrawing damages on behalf of everyone else. Close the quote. And instead, quote, he wants to withdraw the others. He just wants to put them all together. So there is no waiver issue on that as well. I see my time's up. Thanks for listening to me. I appreciate it. All right. Thank you both. We will reserve decision.